IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VIAAS, INC., | |
| **Plaintiff,** | Civil Action No. 2:25-cv-01048 |
| v. | |
| VIVINT, LLC, | JURY TRIAL DEMANDED |
| **Defendant.** | |

**PLAINTIFF VIAAS, INC.'S CORRECTED OPPOSITION TO VIVINT'S RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

i

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD .............................................................................................2

III.    ARGUMENT ..........................................................................................................5

        A.      The July 2, 2025 Nunc Pro Tunc Assignment Is a Confirmatory Memorialization
                of the 2014 Third Iris → Barracuda Transfer ...........................................................5
                1.  The corporate and liquidation records show that all Third Iris assets, including
                    the patents, moved to Barracuda in 2014–2015.................................................5
                2.  The July 2, 2025, instrument recites that prior transfer and confirms it...........6

        B.      The Harris County Judgment Warrants Respect Under Full Faith and Credit and
                Comity and Independently Supports the Third Iris → Barracuda Link...................7
                1.  Full faith and credit requires federal courts to give state judgments the same
                    effect they have in the rendering state ............................................................8
                2.  Comity counsels that this Court at least treat the Harris County judgment as
                    highly persuasive evidence ..............................................................................9

        C.      The Signature/Authority Objection Goes to Weight, Not Validity, and the
                Corporate Succession Evidence Overcomes It .......................................................9
                1.  By 2025, Third Iris had been wound up and its assets consolidated into
                    Barracuda and then VIAAS ..............................................................................10
                2.  Connolly executed the confirmatory instrument on behalf of VIAAS as
                    successor-in-interest.........................................................................................10

        D.      Gaia, Abraxis, and Enzo Do Not Bar VIAAS's Standing on These Facts.............11

        E.      Even If the July 2, 2025, Instrument Were Imperfect, It Still Confirms a 2014
                Transfer by Operation of Law.................................................................................13

        F.      As of October 17, 2025, VIAAS Held the Exclusionary Rights; That Is All Article
                III Requires ............................................................................................................13

        G.      Vivint's Request for Dismissal With Prejudice and Its "Sham" Narrative Are
                Unwarranted............................................................................................................14

III.    CONCLUSION......................................................................................................15

ii

## TABLE OF AUTHORITIES

**Cases**

*Abraxis Bioscience, Inc. v. NAVINTA LLC*, 625 F.3d 1359 (Fed. Cir. 2010) ................................ 12

*Akazawa v. Link New Technology Intern., Inc.*, 520 F.3d 1354 (Fed.Cir. 2008) ..................................................................................3, 4, 6, 7, 8, 9, 11, 13

*Ashford v. United States*, 463 F. App'x 387 (5th Cir. 2012) .......................................................... 15

*Board of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Systems*, 583 F.3d 832 (Fed.Cir.2009) .................................................................................................... 4

*Discovision Assocs. v. Fuji Photo Film Co. Ltd.*, No. 07 Civ. 6348 (PAC), 2007 WL 5161825 (SDNY 2007) .................................................................................................................... 4

*Doukas v. Ballard*, 825 F.Supp.2d 377 (2011) ............................................................................. 4

*Enzo APA & Son, Inc. v. Geapag AG,* 134 F.3d 1090 (Fed. Cir. 1998) ........................................ 12

*Fenn v. Yale University*, 393 F.Supp.2d 133 (D.CT. 2004) ........................................................... 4

*Force MOS Technology Co., Ltd. v. ASUSTek Computer, Inc.*, 2025 WL 269169 (2025) ............ 4

*Gaia Technologies v. Reconversion Tech.*, 93 F.3d 774 (Fed. Cir. 1996) ..................................... 12

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347 (Fed.Cir.2010) .................... 5

*Jim Arnold corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567 (Fed Cir. 1997) .................................... 4

*Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed.Cir.2008) .............................................. 4

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) ....................................................... 8

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334 (Fed. Cir. 2022) .......................... 2, 13

*Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007) ......................................................... 3

*Nanomedicon, LLC., v. Research Houndation Of New York,* 784 F.Supp.2d 153 (EDNY 2011) .................................................................................................................... 4

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967 (Fed. Cir. 2017) .............................................................................................................................. 3

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 1009404 (EDTX 2019) ........ 3

*Sky Techs. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009) ...............................3, 5, 7, 8, 9, 11, 13

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502 (5th Cir. 2015) ......... 2

*Synergy Advanced Pharmaceuticals, Inc., v. Capebio, LLC.,* 797 F.Supp.2d 276 (SDNY 2011) .................................................................................................................... 4

*Wheeler v. United States*, 11 F.3d 156 (Fed. Cir. 1993) .............................................................. 15

*WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) ..................................... 2, 3, 14

**Constitutional Provisions & Statutes**

28 U.S.C. § 1738 .............................................................................................................. 8

35 U.S.C. § 261 ............................................................................................................ 3, 7

**Rules & Regulations**

RULE 12(b)(1) ............................................................................. 4, 1, 2, 9, 13, 15

## I.    INTRODUCTION

Vivint's third Rule 12(b)(1) motion again claims that VIAAS lacks Article III standing to assert U.S. Patent Nos. 8,558,888 ("the '888 patent") and 9,472,069 ("the '069 patent") because, it says, there is a "broken chain of title" between Third Iris Corp., Barracuda Networks, Inc. ("Barracuda"), and VIAAS. Whatever force that contention had on the limited record before Judge Cardone in April 2023, it does not reflect the record now before this Court.

The current evidentiary record shows that:

1. Third Iris Corp.—a wholly-owned Barracuda subsidiary—transferred all of its assets, including the asserted patents, to Barracuda in 2014–2015 as part of its voluntary liquidation. That transfer is acknowledged by Barracuda's former CFO and Third Iris officer, David Faugno,[1] and corroborated by and corporate records of a written document transferring title,[2] Cayman Islands[3] and Delaware dissolution[4] records and Barracuda's S-1 filing.[5]

2. Barracuda then assigned the patents to VIAAS in 2017 under a Bill of Sale and Assignment and a contemporaneous patent assignment recorded at the USPTO (Reel/Frame 042834/0050),[6] and confirmed via a 2023 nunc pro tunc assignment (Reel/Frame 065915/0656).[7]

3. VIAAS has ever since exercised the rights of owner: paying maintenance fees[8] (including petitioning to reinstate the '174 patent after an inadvertent lapse),[9] licensing the patents

---

[1] Ex. E at 9/100.
[2] Ex. E at 11-14/100.
[3] Ex. E at 30/100.
[4] Ex. E at 23-27/100.
[5] Ex. E at 32-24/100.
[6] Ex. E at 36-48/100.
[7] Ex. E at 53-58/100
[8] Ex. E at 70-72/100.
[9] Ex. E at 63-68/100.

to third parties, and enforcing them. No other entity has asserted ownership or retained an independent right to sue Vivint.[10]

4. In 2025, before this case was filed, VIAAS obtained and recorded a confirmatory nunc pro tunc assignment executed July 2, 2025 that memorializes the 2014 Third Iris→Barracuda transfer.[11] In an uncontested declaratory-judgment action, the 165th Judicial District Court of Harris County, Texas entered a final judgment declaring that this July 2, 2025 instrument "is effective to assign" the '174 and '888 patents "from Third Iris Corp. to Barracuda Networks, Inc. on October 24, 2014."[12]

Vivint attacks the July 2, 2025, instrument as a "sham," challenges Matthew Connolly's authority to sign it, and invokes *Gaia*, *Abraxis*, and *Enzo* to argue that nunc pro tunc documents cannot fix standing. Those arguments mischaracterize the instrument, disregard the corporate-succession evidence, and overread the Federal Circuit's timing cases. They also ignore the respect federal courts owe to final state-court judgments on issues of state contract and corporate law under the Full Faith and Credit Act and principles of comity.

Under Federal Circuit law, the "touchstone" of constitutional standing in a patent suit is whether the plaintiff held an exclusionary right under the asserted patents when it filed the complaint. *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264–65 (Fed. Cir. 2010). The record here shows that by the October 17, 2025 filing date, VIAAS—and no one else—held the rights to exclude Vivint and sue it for infringement of the '888 and '069 patents. That is sufficient to defeat a factual Rule 12(b)(1) challenge. The motion should be denied. At minimum, there is no basis for dismissal with prejudice or for pre-judging entitlement to fees or sanctions.

---

[10] There is no evidence of claimant.
[11] Ex . E at 4-7/100.
[12] Ex. E at 2/100.

2

**II. LEGAL STANDARD**

Vivint brings a factual Rule 12(b)(1) challenge. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1341 (Fed. Cir. 2022) (distinguishing facial and factual attacks and applying Fifth Circuit procedural law). In response to a factual jurisdictional attack, VIAAS "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain [its] burden." *Id.* (*quoting Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

Substantive standing in patent cases is governed by Federal Circuit law. *Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1337 (Fed. Cir. 2007). Article III requires that a plaintiff hold an exclusionary right in the asserted patents at filing such that infringement causes it legal injury. *WiAV*, 631 F.3d at 1264–65. "Standing must be present at the time the suit is brought." *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 970 (Fed. Cir. 2017). However, Article III does not demand perfect historical paperwork, only that the plaintiff in fact held the relevant rights on the filing date. *See Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379–81 (Fed. Cir. 2009).

State law typically determines questions of patent ownership and the authority of parties to execute assignments. Federal patent law mandates that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. §261 This statutory requirement under 35 U.S.C. §261 is clear and unequivocal, constituting substantive federal law that mandates a specific written assignment from an assignor to assignee.  Further, "Subject to the provisions of this title, patents shall have the attributes of personal property" 35 U.S.C. §261.

3

However, state law governs patent ownership and contractual authority. Despite the federal writing requirement, the Federal Circuit has consistently held that "state law, not federal law, typically governs patent ownership" *Akazawa v. Link New Technology Intern., Inc*., 520 F.3d 1354, 1357 (Fed.Cir. 2008). Further cited by *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 1009404 (EDTX 2019). This principle extends to determining who has the authority to execute patent assignments on behalf of corporations or other entities. In a recent Texas case involving Taiwanese law, the court examined whether corporate supervisors had authority under applicable law to execute a patent assignment agreement, demonstrating that state or foreign law governs the authority of parties to bind entities to assignments. *Force MOS Technology Co., Ltd. v. ASUSTek Computer, Inc*., 2025 WL 269169 (2025).

The Federal Circuit made clear in *Akazawa v. Link New Tech. Int'l, Inc*. that the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. *Akazawa v. Link New Technology Intern., Inc*., 520 F.3d 1354, 1357 (2008), citing *Jim Arnold corp. v. Hydrotech Sys., Inc*., 109 F.3d 1567, 1572 (Fed Cir. 1997). This rule applies even when the patent itself is a federal creation, because determining ownership does not implicate the validity or enforceability of the patent. *Doukas v. Ballard*, 825 F.Supp.2d 377, 383 (2011). Courts have explained that although a cause of action for patent infringement is governed exclusively by federal law, the issue of ownership of patents is governed by state law, *Fenn v. Yale University*, 393 F.Supp.2d 133, 141 (D.CT. 2004), it may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed.Cir.2008) (Construction of patent assignment agreements is a matter of state contract law).

4

### III. ARGUMENT

**A. The July 2, 2025 Nunc Pro Tunc Assignment Is a Confirmatory Memorialization of the 2014 Third Iris → Barracuda Transfer**

Vivint's central premise is that there is "no evidence" Third Iris Corp. ever transferred the patents to Barracuda. That was the Western District's concern in 2023; it is not an accurate description of the record now before this Court.

**1. The corporate and liquidation records show that all Third Iris assets, including the patents, moved to Barracuda in 2014–2015**

The evidence now includes:L Corporate structure. Barracuda's SEC Form S-1 lists "Third Iris Corp." as a wholly-owned subsidiary of Barracuda Networks, Inc. (Ex. B-2).[13] Cayman iquidation. The Cayman Islands Gazette notices the voluntary liquidation of Third Iris Corp. in 2014, including a final shareholders' meeting (Ex. B-1).[14] Delaware dissolution. Third Iris, Inc. (Delaware) was dissolved in 2015, with Barracuda identified as the parent in IRS Form 966 and related documents.[15] Faugno unsworn declaration. Barracuda's then-CFO and an officer of Third Iris, David Faugno, states:

> All assets of Third Iris, Corp. were transferred to Barracuda Networks the parent company, including the following patents: U.S. Patent No. 8,194,174; U.S. Patent No. 8,558,888; U.S. Patent No. 9,478,069. (Ex. A (emphasis added)).[16]

He further explains that documenting this assignment at the patent level was intended at the time, and any failure to execute stand-alone patent-assignment forms was inadvertent (Id), as confirmed by corporate records of a written document transferring title.[17] This is the classic scenario in which patent ownership changes "by operation of law" as a result of corporate liquidation and asset distribution, rather than through a single patent-form assignment. *See Sky Techs.*, 576 F.3d at 1379

---

[13] Ex. E at 31-34/100.
[14] Ex. E at 28-30/100.
[15] Ex. E at 23-27/100.
[16] Ex. E at 9/100.
[17] Ex. E at 11-14/100.

("[T]here is nothing that limits assignment as the only means for transferring patent ownership….
[O]wnership of a patent may [also] be changed by operation of law." *Akazawa v. Link New Tech.
Int'l, Inc.*, 520 F.3d 1354, 1356–57 (Fed. Cir. 2008).   Taken together, these records and
acknowledgement show that no later than 2014, Barracuda acquired all of Third Iris's assets,
including the asserted patents, in the course of winding up that wholly-owned subsidiary.

### 2.   The July 2, 2025, instrument recites that prior transfer and confirms it

The July 2, 2025, nunc pro tunc assignment was drafted against that factual background. It
recites that: (1) Third Iris "intended to effectively transfer by Assignment the entire right, title and
interest, including the right to sue for past, present and future infringement, in and to the Assigned
Patents to Barracuda, Inc. on October 24, 2014, prior to liquidation;" (2) Barracuda "intended to
effectively acquire the entire right, title and interest in and to the Assigned Patents on October 24,
2014, prior to liquidation, from Third Iris, Corp.;" (3) Faugno, as CFO of Barracuda and officer of
Third Iris, submits a supporting statement (Ex. A);[18] (4) with corroborating corporate records;[19] and
(5) Barracuda and VIAAS later executed and recorded assignments in 2017 and 2023 consistent
with that transfer (Exs. C,[20] C-1,[21] D,[22] D-1[23]).

The operative clause then provides:

> NOW, THEREFORE, said Assignor, as of the Effective Date, assigned, transferred
> and set over, and by good and sufficient consideration did sell, assign, transfer and
> set over, unto said Assignee, its successors, legal representatives and assigns,
> Assignor's interest in the entire right, title and interest, including the right to sue
> for past and future patent infringement damages, in and to the Assigned Patents….

---

[18] Ex. E at 9/100.
[19] Ex. E at 11-14/100.
[20] Ex. E at 35-48/100.
[21] Ex. E at 49-51/100.
[22] Ex. E at 52-58/100.
[23] Ex. E at 59-61/100.

This is a confirmatory memorialization of a 2014 transfer already effected in the course of liquidation. Federal Circuit law contemplates and accepts such confirmatory instruments as evidence of prior transfers that occurred by operation of law. *See Sky Techs.*, 576 F.3d at 1380–81; *Akazawa*, 520 F.3d at 1356–57.  At a minimum, the July 2, 2025, instrument, combined with the dissolution records and Faugno's acknowledgement, is compelling evidence that the Third Iris→Barracuda transfer in fact occurred in 2014—more than sufficient to meet VIAAS's preponderance burden on this factual jurisdictional challenge.

### B. The Harris County Judgment Warrants Respect Under Full Faith and Credit and Comity and Independently Supports the Third Iris → Barracuda Link

Ownership rights in patents are generally determined by state law because patents are considered personal property (35 U.S.C. §261), and there is no federal common law governing equitable ownership. State law governs contractual disputes involving patent assignments, while federal law sets substantive requirements for valid assignments. Courts have held that ownership disputes based on contractual rights or transfers by operation of law fall under state law. Ownership may depend on assignment agreements and related state contract laws. 26 Fed. Proc., L. Ed. § 60:1126, 5 Annotated Patent Digest § 35:7, Annotated Patent Digest § 26:2.

Federal patent law preempts state law claims that turn on inventorship or impose patent-like protections inconsistent with federal objectives. However, state law claims asserting ownership rights or contract enforcement related to patent assignments are generally not preempted if they do not require resolving inventorship. Federal courts have supplemental jurisdiction over state law ownership disputes arising in patent contexts. This framework upholds federal supremacy in defining inventorship while respecting states' roles in regulating property and contract rights related to patent ownership 4 Annotated Patent Digest § 26:144.100, 5 Annotated Patent Digest § 35:7, 1 Annotated Patent Digest § 2:52.

The 165th Judicial District Court of Harris County, Texas entered a final judgment declaring that the July 2, 2025, nunc pro tunc assignment "is effective to assign" the '174 and '888 patents "from Third Iris Corp. to Barracuda Networks, Inc. on October 24, 2014." (Order Declaring Rights and Final Judgment).[24] Vivint dismisses that judgment as a "sham" and insists this Court should disregard it. That position is inconsistent with the Full Faith and Credit Act and basic principles of comity.

### 1. Full faith and credit requires federal courts to give state judgments the same effect they have in the rendering state

The Full Faith and Credit Act, 28 U.S.C. § 1738, directs federal courts to give state-court judgments "the same full faith and credit… as they have by law or usage" in the courts of the state from which they arise. *See, e.g., Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Federal courts therefore "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id*. (citation omitted).

The Harris County court resolved a state-law declaratory-judgment action concerning the validity and legal effect, under Texas contract and corporate-authority principles, of the July 2, 2025, assignment between Third Iris Corp. and Barracuda. Determining whether a written instrument is a valid contract, who has authority to execute it, and what its terms mean are quintessential issues of state law. *See, e.g., Sky Techs.*, 576 F.3d at 1379–80 (looking to state law to determine effect of foreclosure on patent title); *Akazawa*, 520 F.3d at 1356–57 (looking to foreign inheritance law). To the extent Texas law would treat the Harris County judgment as conclusive on those contract and authority questions, this Court is obliged to give it the same effect, subject to any recognized state-law exceptions. Vivint has not shown that the Harris County

---

[24] Ex. E at 2/100 with exhibits of 3-100/100.

judgment is void, obtained through fraud on the court, or otherwise outside the normal preclusive effect Texas would afford it.

### 2. Comity counsels that this Court at least treat the Harris County judgment as highly persuasive evidence

Even if the Court were to conclude that formal claim preclusion or issue preclusion does not apply for some reason, principles of comity still weigh heavily in favor of treating the Harris County judgment as highly persuasive evidence on questions of: (1) who had authority under Texas and related law to confirm the 2014 transfer, and (2) how the July 2, 2025, instrument should be read under state contract-interpretation principles.

Federal courts routinely defer to state courts' determinations of state-law corporate and contract issues that intersect with patent ownership questions. *See Sky Techs.*, 576 F.3d at 1379–80; *Akazawa*, 520 F.3d at 1356–57. This Court does not cede its exclusive jurisdiction over patent infringement or the requirements of Article III. But in deciding whether VIAAS has met its preponderance burden on a factual Rule 12(b)(1) challenge, it should give substantial weight to the fact that a Texas court of competent jurisdiction has already carefully considered the same 2014–2015 corporate events and the July 2, 2025 instrument and has declared that it is "effective to assign" the patents from Third Iris to Barracuda as of October 24, 2014.  In short, far from being irrelevant or a "sham," the Harris County judgment supports the same conclusion the documentary record and Faugno's declaration support: the Third Iris→Barracuda link is real.

### C. The Signature/Authority Objection Goes to Weight, Not Validity, and the Corporate Succession Evidence Overcomes It

Vivint argues that the July 2, 2025, assignment is "per se ineffective" because it was signed by Matthew Connolly as President of VIAAS, not by a separate officer of Third Iris or Barracuda. That argument ignores who owned the patents by 2025 and how corporate succession works. Matthew Connolly was an employee of Third Iris as least as early as November 13, 2012 (Exhibit

9

B) and an executive officer of Third Iris prior to June 13, 2015. (Exhibit C) As an executive officer Matthew Connolly had the authority to execute the assignment.

1. **By 2025, Third Iris had been wound up and its assets consolidated into Barracuda and then VIAAS**

As the record shows, Third Iris Corp. was a wholly-owned Barracuda subsidiary (S-1; Ex. B-2[25]).

It was dissolved in 2014–2015, and, per Faugno, "all assets of Third Iris, Corp. were transferred to Barracuda Networks the parent company, including" the asserted patents. (Ex. A).[26]

- Barracuda then executed (1) A May 31, 2017, Bill of Sale and Assignment transferring "all of [Barracuda's] right, title and interest in and to the Purchased Assets" to VIAAS;[27] (2) A June 1, 2017 patent assignment recorded at the USPTO (Reel/Frame 042834/0050) listing Barracuda as ASSIGNOR and VIAAS as ASSIGNEE of the '174, '888, and '069 patents;[28] and (3) a December 13, 2023 nunc pro tunc assignment again transferring all right, title, and interest in those patents to VIAAS (Reel/Frame 065915/0656).[29] By July 2, 2025, VIAAS was the undisputed successor in title to all patent rights that had formerly resided in Third Iris and then Barracuda. There was no independent Third Iris entity left to sign anything.

2. **Connolly executed the confirmatory instrument on behalf of VIAAS as successor-in-interest**

The July 2, 2025, signature block identifies Connolly as "President of VIAAS, Inc., Successor-in-Interest to Barracuda Networks, Inc. through assignment of the Assigned Patents and the '069 patent." In other words, he signed in a corporate capacity, on behalf of the current owner of the rights. The Federal Circuit does not require that every confirmatory assignment in a long

---

[25] Ex. E at 31-34/100.
[26] Ex. E at 9/100.
[27] Ex. E at 36-48/100.
[28] Ex. E at 36/100.
[29] Ex. E at 53-58/100.

10

chain be co-signed by an officer of every dissolved predecessor. In *Sky Techs.* and *Akazawa*, the court looked to corporate and state-law documents to determine who ultimately owned and could confirm the transfer of patent rights that had been moved by foreclosure or inheritance. 576 F.3d at 1379–81; 520 F.3d at 1356–57. The focus is on who owns what and whether the record, as a whole, shows that transfer—not on formalistic signature requirements for entities that no longer exist.

Here, authority is established by (1) Third Iris's status as a wholly-owned Barracuda subsidiary;[30] Faugno's unsworn statement that all Third Iris assets were transferred to Barracuda;[31] Barracuda's executed and recorded assignments to VIAAS;[32] VIAAS's consistent conduct as owner in paying maintenance fees and the like;[33] and the Harris County judgment's validation of the July 2, 2025 instrument under state contract and corporate law.[34]

Vivint's reliance on cases like *Filtroil* or *Eastman Kodak*, where signatories attempted to convey property they plainly did not own and had no authority over, is misplaced. Connolly executed the confirmatory assignment on behalf of VIAAS as the then-current owner of the patent rights, memorializing how they passed from Third Iris to Barracuda in 2014.[35] At most, Vivint's objection goes to the weight of this evidence. On the full record, VIAAS has more than carried its burden to show that Barracuda—and then VIAAS—owned the patents long before this case was filed.

> **D.      *Gaia*, *Abraxis*, and *Enzo* Do Not Bar VIAAS's Standing on These Facts**

---

[30] Ex. E at 32-34/100.
[31] Ex. E at 9/100.
[32] Ex. E at 15-27/100, 36-48/100.
[33] Ex. E at 63-68/100, 70-72/100.
[34] Ex. E at 2/100.
[35] Ex. E at 4-7/100.

Vivint invokes *Gaia Techs.*, *Abraxis Bioscience*, and *Enzo* to argue that nunc pro tunc assignments cannot cure standing defects. Those cases do not control here.

- In *Gaia Techs*., the plaintiff concededly had no assignment at the time suit was filed; only after filing did it obtain a written assignment from the patentee. 93 F.3d 774, 778–80 (Fed. Cir. 1996). The later assignment could not retroactively create standing for a suit already filed. *Id.* at 780. In *Abraxis\**, the plaintiff filed suit in 2007 but did not acquire the patents until 2009. 625 F.3d 1359, 1362–64 (Fed. Cir. 2010). A purchase agreement containing nunc pro tunc language could not retroactively confer standing for the already-filed case. *Id.* at 1366–67. In *Enzo*, the license language was purely prospective; Enzo had no exclusionary rights at filing and only later obtained an assignment. 134 F.3d 1090, 1092–94 (Fed. Cir. 1998). Again, the later assignment could not relate back to fix standing.

The common thread is that in each case the plaintiff undisputedly lacked any ownership or exclusionary rights when it filed suit and then tried to cure that defect after the fact. That is not what happened here. VIAAS relies on pre-filing transactions. Third Iris's asset transfer to Barracuda in 2014–2015 (by operation of law in liquidation,[36] confirmed by Faugno[37] and corporate records of a written document transferring title,[38] and memorialized in the 2025 confirmatory assignment[39] and Harris County judgment[40]); Barracuda's assignments to VIAAS in 2017 and 2023 (Bill of Sale;[41] USPTO Assg. Reel/Frame 042834/0050;[42] Reel/Frame

---

[36] Ex. E at 15-27/100.
[37] Ex. E at 9/100.
[38] Ex. E at 11-14/100.
[39] Ex. E at 4-7/100.
[40] Ex. E at 2/100.
[41] Ex. E at 17-18/100
[42] Ex. E at 15-27/100.

065915/0656[43]); VIAAS's continuous conduct as owner;[44] and the July 2, 2025, confirmatory assignment[45] and Harris County judgment,[46] both predating this October 2025 complaint.

VIAAS is not seeking to use a post-complaint assignment to retroactively create standing it lacked at filing. It is using pre-complaint documents and corporate-succession evidence to demonstrate that it already held full exclusionary rights when it filed this case. *Gaia*, *Abraxis*, and *Enzo* therefore do not require dismissal.

### E. Even If the July 2, 2025, Instrument Were Imperfect, It Still Confirms a 2014 Transfer by Operation of Law

Even if the Court had concerns about the July 2, 2025 instrument under § 261's formal assignment requirements, that would not defeat standing.[47]   As noted, the Federal Circuit recognizes that patent ownership can change by operation of law, not just by classic assignment. *Sky Techs.*, 576 F.3d at 1379–81; *Akazawa*, 520 F.3d at 1356–57. Courts may look to foreign or state corporate, liquidation, and inheritance law to determine where title resides and then treat later patent documents as evidence of that fact.  Here, the (1) wholly-owned subsidiary relationship;[48] (2) Cayman and Delaware dissolution and liquidation records;[49] (3) Faugno declaration;[50] (4) corporate records;[51] and (5) Harris County judgment,[52] together establish that all Third Iris assets, including the '174, '888, and related patents, were transferred to Barracuda in 2014. The July 2, 2025 instrument is at least corroborating evidence of that transfer and its intended date. A factual Rule 12(b)(1) motion is resolved under a preponderance standard, not a "beyond a reasonable

---

[43] Ex. E at 53-58/100.
[44] Ex. E at 63-68/100, 70-72/100.
[45] Ex. E at 4-7/100.
[46] Ex. E at 2/100.
[47] The corporate records at 11-14/100 are a written record.
[48] Ex. E at 31-34/100.
[49] Ex. E at 23-29/100.
[50] Ex. E at 9/100.
[51] Ex. E at 11-14/100.
[52] Ex. E at 2/ 100.

doubt" standard. *Mitek*, 34 F.4th at 1341. On this record, the evidence concerning the Third Iris→Barracuda link more than satisfies that burden.

### F. As of October 17, 2025, VIAAS Held the Exclusionary Rights; That Is All Article III Requires

The historical chain is important, but for Article III purposes the operative question is narrower, whether as of October 17, 2025, did VIAAS hold an exclusionary right in the asserted patents such that Vivint's alleged infringement inflicted legal injury? *WiAV*, 631 F.3d at 1264–65. The answer is yes: Third Iris's rights moved to Barracuda by 2014–2015, as shown above. Barracuda's rights moved to VIAAS via present-tense assignments in 2017, confirmed in 2023, and recorded at the USPTO. VIAAS alone paid maintenance fees (including petitioning to reinstate the '174 patent),[53] licensed the patents, and enforced them against alleged infringers. Vivint has not identified any other entity that, as of the filing date, retained an independent right to license Vivint or to sue it for infringement. Under *WiAV*, that makes VIAAS the party that suffers legal injury from Vivint's alleged infringement and thus the party with constitutional standing to sue.

### H. Vivint's Request for Dismissal With Prejudice and Its "Sham" Narrative Are Unwarranted

Finally, Vivint asks for dismissal with prejudice and foreshadows fee-shifting and sanctions. That is not appropriate on this record.  Evolving record. Each prior VIAAS case Vivint cites was filed against a different factual backdrop. Judge Cardone's 2023 dismissal expressly highlighted the lack of a clearly documented Third Iris→Barracuda link. VIAAS responded by obtaining corporate records, sworn testimony from Barracuda's CFO, confirmatory assignments, and a state-court declaratory judgment. That is a good-faith effort to clarify a complex corporate history, not harassment.  Good-faith legal dispute. The interplay of cross-border liquidation, corporate succession, § 261, and federal standing law presents nontrivial legal issues on which

---

[53] Ex. E at 65-68/10.

reasonable lawyers can disagree. VIAAS's position is supported by evidence, by Federal Circuit case law recognizing transfers by operation of law, and by a Texas court's judgment on state contract and corporate questions. That is not the stuff of sanctions.   No basis for prejudice. A dismissal for lack of subject-matter jurisdiction is not a judgment on the merits and ordinarily must be without prejudice. *See Wheeler v. United States*, 11 F.3d 156, 159–60 (Fed. Cir. 1993); *Ashford v. United States*, 463 F. App'x 387, 395–96 (5th Cir. 2012). On this record, dismissal is unwarranted. But even if the Court were to disagree about standing, there is no basis to convert a jurisdictional ruling into a merits-preclusive one or to pre-adjudicate potential fee-shifting.

## IV.    CONCLUSION

The current record establishes a continuous chain of title from inventor Roskowski to Third Iris Corp.; from Third Iris to Barracuda in 2014–2015 through liquidation and asset transfer, as confirmed by Faugno's declaration, corporate records, the July 2, 2025 confirmatory assignment, and the Harris County judgment; and from Barracuda to VIAAS in 2017 and 2023 via present-tense assignments recorded at the USPTO.

By the October 17, 2025, filing date, VIAAS held the exclusionary rights in the '888 and '069 patents vis-à-vis Vivint, and no one else had an independent right to sue Vivint for infringement of those patents. VIAAS has therefore carried its burden to establish Article III standing by a preponderance of the evidence.  Vivint's Rule 12(b)(1) motion should be denied. In any event, there is no basis for dismissal with prejudice or for any award of fees or sanctions at this preliminary jurisdictional stage.

Dated: January 12, 2026                 Respectfully submitted,

                                        */s/ William P. Ramey, III*
                                        William P. Ramey, III
                                        **Ramey LLP**

15

Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)

**Attorneys for VIAAS, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to the Federal Rules of Civil Procedure and LR5, I hereby certify that all counsel of record who have appeared in this case are being served on this day of January 12, 2026, with a copy of the foregoing via CM/ECF filing system.

_/s/ William P. Ramey, III_
William P. Ramey, III

16