**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **VIAAS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Case No. 2:25-cv-01048-JRG-RSP** |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **VIVINT LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT VIVINT LLC'S**
**REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT**
<u>**FOR LACK OF SUBJECT MATTER JURISDICTION**</u>

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION.................................................................................................1

II.     ARGUMENT....................................................................................................3

    A.     VIAAS Has Come Forward with No Credible Evidence that the Asserted Patents Were Ever Transferred from Third Iris Corp. to Barracuda. ............................................................................................ 3

        1.     There is No Credible Evidence of a Transfer "by Operation of Law." ...... 3

        2.     The 2025 "Nunc Pro Tunc Assignment" and the Harris County Order Cannot Fix the Broken Chain of Tile for the Asserted Patents................... 6

    B.     VIAAS Has Come Forward with No Credible Evidence that the Asserted Patents Were Ever Transferred from Barracuda to VIAAS............ 9

    C.     VIAAS Does Not Hold any "Exclusionary Rights" in the Asserted Patents................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*In re CTP Innovations, LLC*, 2016 U.S. Dist. LEXIS 165684 (Fed Cir. 2016)............................10

*Eastman Kodak Co. v. Sun Microsystems, Inc.*, No. 02-CV-6074T, 2004 U.S.
    Dist. LEXIS 32570 (W.D.N.Y. Sep. 10, 2004) ..........................................................................7

*Filtroil, N.A. v. Maupin*, No. 98-1212, 1998 U.S. App. LEXIS 30820 (Fed. Cir.
    Dec. 3, 1998)..............................................................................................................................7

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985)..........................................8

*Port-a-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-cv-01511-WYD-BNB, 2015
    U.S. Dist. LEXIS 6911 (D. Colo. Jan. 20, 2015).....................................................................10

*Sky Techs. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009)............................................................8

*VIAAS Inc. v. Amazon.com Inc. et al.*, Nos. WA-22-CV-1041-KC, -1046-KC, -
    1047-KC, -1048-KC, and -1052-KC, 2023 U.S. Dist. LEXIS 72281 (W.D.
    Tex. Apr. 25, 2023)............................................................................................... 3-4, 9

**Regulations**

37 C.F.R. § 3.54 ................................................................................................................................10

## I.    INTRODUCTION

"*If at first you don't succeed, try, try again.*"  - William Edward Hickson (1836)

VIAAS's attempt to relitigate the same problematic chain of title issues is reflective of its strategy to take multiple bites at the same apple across different courts until it finally gets the result it wants. But VIAAS's lack of standing to assert these patents against Vivint is just as apparent now as it has always been. VIAAS's Opposition is replete with mischaracterizations of the factual record and the applicable law. And in fact, many of VIAAS's factual assertions and legal arguments were already rejected by the Western District of Texas court in 2023 when it found VIAAS to lack constitutional standing to assert these same patents.

*First*, just as happened in the Western District of Texas case in 2023 and the Eastern District of Texas case in 2024, VIAAS has once again failed to come forward with any credible evidence of a proper assignment of the asserted patents from Third Iris Corp. to Barracuda Networks, Inc. VIAAS argues that the asserted patents were transferred from Third Iris Corp. to Barracuda "in 2014-15 as part of its voluntary liquidation." But as the Western District of Texas court already found in 2023, none of the alleged "evidence" that VIAAS points to in its Opposition is sufficient to establish that the patents were ever transferred by "operation of law" from Third Iris Corp. to Barracuda as part of a voluntary liquidation. And in fact, VIAAS has produced no credible evidence that any dissolution or liquidation of Third Iris Corp. ever actually occurred, or that under Cayman Islands law Third Iris Corp.'s assets would have automatically been transferred to its alleged parent company following a dissolution.

*Second*, by manufacturing the sham "nunc pro tunc assignment" in 2025 purportedly from Third Iris Corp. to Barracuda that it then got a Harris County court to endorse in an uncontested proceeding of which Vivint had no notice until after that court's ruling, VIAAS implicitly conceded that it lacks credible evidence that the asserted patents were transferred "by operation of

law" from Third Iris Corp. to Barracuda as part of a voluntary liquidation. While it acknowledges in the Opposition that the 2025 "nunc pro tunc assignment" was signed only by Matthew Connolly as the President of VIAAS and not by either the purported assignor (Third Iris Corp.) or purported assignee (Barracuda), VIAAS tries to overcome that fatal defect by arguing that Mr. Connolly was an "executive officer" of Third Iris Corp. in 2015 and that gave him the authority to execute a retroactive assignment on behalf of Third Iris Corp. in 2025. That nonsensical argument fails for two independent reasons: (1) VIAAS claims that Third Iris Corp. was dissolved in 2015, and no person could possibly have authority to sign a document in 2025 on behalf of an entity that no longer exists, and (2) even if Third Iris Corp. still existed in 2025, a former executive does not *ipso facto* have authority to sign a document on behalf of an entity he was only associated with ten years prior. VIAAS also attempts to argue, apparently in the alternative, that Connolly executed the 2025 "nunc pro tunc" assignment "on behalf of VIAAS as successor-in-interest" of the asserted patents, but this argument is entirely circular because it presupposes that VIAAS is the current owner of the asserted patents, which Vivint obviously disputes.

**Third**, the Harris County judgment endorsing the 2025 "nunc pro tunc assignment" does not have any preclusive effect here because that court lacked jurisdiction to rule on the validity and interpretation of that attempted assignment, given that federal law is used to determine the validity and interpretation of a patent assignment. Moreover, the judgment is entitled to no weight in this Court because the proceeding was uncontested and Vivint received no notice of it.

**Fourth**, even if this Court were to overlook the threshold problems with the 2025 "nunc pro tunc assignment," the following holes in the chain of title still persist and deprive VIAAS of standing to assert both patents: (1) there is still no valid assignment of the '069 Patent from Third Iris Corp. to Barracuda because the 2025 "nunc pro tunc" assignment only purports to retroactively

2

transfer the '888 Patent—not the '069 Patent, and (2) there is still no valid assignment of *either* asserted patent from Barracuda to VIAAS. At the time a purported "nunc pro tunc assignment" from Barracuda to VIAAS was signed in 2023 attempting to retroactively transfer the patents from Barracuda to VIAAS as of 2017, the 2025 "nunc pro tunc" assignment purportedly from Third Iris Corp. to Barracuda did not exist and therefore Barracuda did not even arguably have any rights in 2023 (or 2017) that could have been retroactively transferred to VIAAS.

## II.    ARGUMENT

### A.    VIAAS Has Come Forward with No Credible Evidence that the Asserted Patents Were Ever Transferred from Third Iris Corp. to Barracuda.

#### 1.    There is No Credible Evidence of a Transfer "by Operation of Law."

In its Opposition, VIAAS attempts to relitigate whether the asserted patents were transferred "by operation of law" from Third Iris Corp. to Barracuda "in 2014-15 as part of [Third Iris Corp.'s] voluntary liquidation." Dkt. 11 at 1, 5-6, 13-14. As evidence of the alleged dissolution and transfer, VIAAS points to several documents, most of which were already rejected by the Western District of Texas court in 2023 as evidence of an effective transfer.

First, VIAAS argues that the purported dissolution of Third Iris Corp. and transfer of the asserted patents is "corroborated by . . . corporate records of a written document transferring title." Dkt. 11 at 1, 5, 13 (citing Dkt. 11-4 at "11-14/100" (i.e., PageID #569-572)). The purported "corporate record" it cites to is an email string from 2017 between Sophia Valentim at Barracuda and Mr. Connolly at VIAAS. In analyzing the same email string, the Western District of Texas court already ruled in 2023 that "[n]o language in the emails purports to actually assign the Patents" and "[o]n their own terms, the emails submitted by [VIAAS] reflect, at most, another unfulfilled promise to assign the patents." *VIAAS Inc. v. Amazon.com Inc. et al.*, Nos. WA-22-CV-1041-KC, -1046-KC, -1047-KC, -1048-KC, and -1052-KC, 2023 U.S. Dist. LEXIS 72281,

3

at *17-18. (W.D. Tex. Apr. 25, 2023). To the extent VIAAS is arguing that the emails corroborate that Third Iris Corp. (which is the Cayman Islands entity to which the asserted patents were assigned in 2009—*see* Dkt. 9 at 15-16) was dissolved "in 2014-15," there is no such corroboration in those emails. Ms. Valentim's comment in her email to Mr. Connolly on June 13, 2017 that "Third Iris was dissolved" is clearly a reference to Third Iris <u>Inc.</u>, which was a <u>Delaware</u> entity that the Western District of Texas court found in 2023 was a separate entity from Third Iris Corp. (the Cayman Islands entity). *See Amazon.com*, 2023 U.S. Dist. LEXIS 72281, at *14. Confirmation that Ms. Valentim was referring to Third Iris, <u>Inc.</u> (the Delaware entity) being dissolved can be seen in the documents attached to her email, one of which is titled "Barracuda – Third Iris DE [i.e., Delaware] Certificate of Dissolution." Dkt. 11-4 at PageID #569.

Second, VIAAS argues that the purported dissolution of Third Iris Corp. and transfer of the asserted patents is "corroborated by . . . Cayman Islands and Delaware dissolution records." Dkt. 11 at 1, 5, 13 (citing Dkt. 11-4 at "30/100 and "23-27/100" (i.e., PageID #588 and 581-572, respectively)). The purported "Delaware dissolution records" are irrelevant here, because they only relate to Third Iris, <u>Inc.</u> (*see* Dkt. 11-4 at PageID #581-585), and the Western District of Texas court already ruled in 2023 that there was "no justification" for the court to "treat Third Iris Inc. and Third Iris Corp. as the same entity." *See Amazon.com*, 2023 U.S. Dist. LEXIS 72281, at *14-15. Moreover, the purported "Cayman Islands dissolution record" is not evidence that such a dissolution ever actually took place in the Cayman Islands. Rather, the document appears to be a post in the "Cayman Islands Gazette" stating that a meeting of shareholders of Third Iris Corp. <u>would be held</u> on November 26, 2014 in the Cayman Islands, the agenda for which <u>would</u> include "approv[ing] the joint voluntary liquidators' final report . . . and nemuneration." Dkt. 11-4 at PageID #588. There is no evidence in the record that (1) such a meeting ever actually took

4

place, (2) the referenced approvals were actually given at the purported meeting, or (3) Third Iris Corp. was ever actually dissolved and liquidated at or after the purported meeting. And most importantly, even if such a dissolution and liquidation took place, there is no evidence or proffered legal authority in the record under Cayman Islands law that the purported dissolution would somehow necessarily result in Third Iris Corp.'s assets (including the asserted patents) being automatically transferred to its purported parent company Barracuda, or when such an automatic transfer purportedly would have taken place under Cayman Islands law.

Third, VIAAS argues that the purported dissolution of Third Iris Corp. and transfer of the asserted patents is "corroborated by . . . Barracuda's S-1 filing." Dkt. 11 at 1, 5, 13 (citing Dkt. 11-4 at "32-24/100" (i.e., PageID #590-592)). The cited document does appear to be the S-1 filing of Barracuda Networks, Inc. dated October 1, 2013. However, although it does appear to show Third Iris Corp. as being a subsidiary of Barracuda as of that date, the fact that Third Iris Corp. was a subsidiary of Barracuda in 2013 is not evidence that: (a) Third Iris Corp. was ever actually dissolved or liquidated in the Cayman Islands, or (b) even if such a dissolution and liquidation took place, under Cayman Islands law the dissolution necessarily would have resulted in Third Iris Corp.'s assets (including the asserted patents) being automatically transferred to its purported parent company Barracuda.

Fourth, VIAAS argues that the purported dissolution of Third Iris Corp. and transfer of the asserted patents is "acknowledged by Barracuda's CFO and Third Iris officer David Faugno." Dkt. 11 at 1, 5, 13 (citing Dkt. 11-4 at "9/100" (i.e., PageID #567)). The cited document is titled "Statement of Understanding Regarding Assignment of Patents" and in it Mr. Faugno vaguely alleges that "[a]ll assets of Third Iris Corp. were transferred to Barracuda Networks the parent company, including [the asserted patents]." Dkt. 11-4 at PageID #567. This document comes

5

nowhere close to corroborating that Third Iris Corp. was dissolved "in 2014-15" or that its assets (including the asserted patents) were transferred to Barracuda at that time, for the following reasons: (1) the "statement" is not a sworn declaration or affidavit and in fact the document explicitly states that it "does not constitute an admission of legal authority to bind the company as of the present date," and (2) not only does the "statement" fail to allege that Third Iris Corp. was ever dissolved, it also does <u>not</u> assert a particular date or mechanism by which "[a]ll assets of Third Iris Corp. were transferred to Barracuda Networks."

In summary, none of VIAAS's purported evidence establishes or corroborates that the asserted patents were ever transferred from Third Iris Corp. to Barracuda by operation of law.

> 2.    The 2025 "Nunc Pro Tunc Assignment" and the Harris County Order Cannot Fix the Broken Chain of Tile for the Asserted Patents.

In an obvious concession that it lacks sufficient evidence that the asserted patents were ever transferred from Third Iris Corp. to Barracuda by operation of law, VIAAS argues that the lack of a valid transfer of the patents from Third Iris Corp. to Barracuda was "fixed" by: (1) a "confirmatory nunc pro tunc assignment executed July 2, 2025 that memorializes the 2014 Third Iris→Barracuda transfer," and (2) a judgment from a Harris County court "declaring that [the] July 2, 2025 instrument is 'effective to assign' the ['888 Patent][1] 'from Third Iris Corp. to Barracuda Networks, Inc. on October 24, 2014.'" Dkt. 11 at 2. VIAAS is wrong on both counts.

> a.    *The 2025 "Nunc Pro Tunc Assignment" Is Not Valid.*

As explained in Vivint's motion, the 2025 "nunc pro tunc assignment" is not a valid assignment because it is only signed by one signatory: <u>VIAAS's</u> President Matthew Connolly,

---

[1] As noted above, even *if* the 2025 "nunc pro tunc assignment" was effective to retroactively transfer the '888 Patent from Third Iris Corp. to Barracuda effective 2014, there would still be a hole in the chain of title for the '069 Patent given that the '069 Patent is not included in the 2025 "nunc pro tunc assignment" and therefore could not possibly have been transferred from Third Iris Corp. to Barracuda via that document. *See* Dkt. 9 at 18 fn.2.

6

and <u>not</u> by any representatives of the purported assignor (Third Iris Corp.) or the purported assignee (Barracuda). As a matter of basic contract law, VIAAS's President cannot unilaterally effect a contractual transfer of rights (retroactive or not) from one third party to another third party. *See Filtroil, N.A. v. Maupin*, No. 98-1212, 1998 U.S. App. LEXIS 30820, at *7 (Fed. Cir. Dec. 3, 1998); *Eastman Kodak Co. v. Sun Microsystems, Inc.*, No. 02-CV-6074T, 2004 U.S. Dist. LEXIS 32570, at *7 (W.D.N.Y. Sep. 10, 2004). VIAAS contends that Vivint's argument that the assignment is invalid "ignores who owned the patents by 2025 and how corporate succession works." Dkt. 11 at 9. VIAAS's confusing and circular arguments are essentially that Connolly as the President of VIAAS had authority to execute a retroactive assignment on behalf of Third Iris Corp. in 2025 for two reasons: (1) because Connolly was allegedly an executive officer of Third Iris Corp. in 2015, he had authority to execute a retroactive assignment on behalf of Third Iris Corp. in 2025 (Dkt. 11 at 9-10), and (2) because VIAAS was allegedly the "undisputed successor in title" to the asserted patents in 2025, Connolly had authority to execute an assignment "on behalf of VIAAS as the then-current owner of the patent rights" (Dkt. 11 at 10-11).

Unsurprisingly, VIAAS cites no law for the proposition that a former executive of a dissolved company has authority to enter into retroactive agreements on behalf of that now non-existent company. It is axiomatic that someone who is no longer associated with a defunct company lacks such authority. Again, VIAAS itself asserts that Third Iris Corp. was dissolved "in 2014-15," and it is axiomatic that no one has authority to enter into retroactive agreements on behalf of a non-existent company.

As for VIAAS's circular argument that Connolly as the President of VIAAS had authority to execute a retroactive assignment on behalf of Third Iris Corp. in 2025 because VIAAS is the "undisputed successor in title" to the asserted patents in 2025, the entire point of Vivint's motion

7

to dismiss is that VIAAS is <u>not</u> the "undisputed successor in title" for the asserted patents—and if VIAAS was the "undisputed successor in title" there would be no need for a retroactive assignment in 2025 because the chain of title would not be broken. Moreover, even if VIAAS was the current owner of the patents, it still would lack authority to enter into retroactive agreements on behalf of prior owners of the patents like Third Iris Corp. (particularly if such prior owners were—as VIAAS claims— dissolved and no longer exist).

    b.  *The Harris County Court Lacked Jurisdiction, and Its Judgment Is Not Preclusive and Is Entitled to No Weight in this Court.*

VIAAS contends that the Harris County court's judgment regarding the effect of the 2025 "nunc pro tunc assignment" is entitled to "full faith and credit" in this Court. Dkt. 11 at 8-9. Simply put, that is an inaccurate statement of the law. While state law controls any transfer of patent ownership by operation of law <u>not</u> deemed an assignment (e.g., foreclosure or inheritance), <u>federal law</u> is used to determine the validity and terms of an assignment. *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009). Generally speaking, a state judgment does not have preclusive effect on a cause of action that is within the exclusive jurisdiction of the federal courts. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985). Therefore, the Harris County court lacked jurisdiction to determine the validity and terms of the purported assignment, and its judgment is entitled to no preclusive effect in this Court.[2]

Implicitly conceding that it does not have a leg to stand on regarding the preclusive effect (or lack thereof) in this Court of the Harris County court's judgment, VIAAS argues that this Court should treat the Harris County court's judgment as "highly persuasive evidence" because

---

[2] VIAAS falsely argues that "Vivint dismisses the [Harris County court's] judgment as a 'sham' . . . ." Dkt. 11 at 8. Vivint has never argued that the judgment itself is a sham but rather that the 2025 "nunc pro tunc assignment" is a sham because it was manufactured by VIAAS ten years after the fact, is not signed by either the purported assignor (Third Iris Corp.) or the purported assignee (Barracuda), and was litigated unilaterally by VIAAS in a state court proceeding while strategically giving no notice to any other interested parties, like Vivint. *See* Dkt. 9 at 11, 17.

that court "carefully considered" the relevant evidence. Dkt. 11 at 9. That argument fails for three reasons. First, VIAAS did not name Vivint or any other opposing parties in its Petition in the Harris County proceeding, and Vivint received no notice of the proceeding until <u>after</u> that court issued its judgment shortly before this case was filed. Therefore, the Harris County court only heard VIAAS's side of the story before rendering its decision. Second, VIAAS's counsel in that proceeding (and this one) falsely represented to that court that the ownership of the '888 Patent "is not a contested matter" and stated that he was "just looking for a quick signature if I might, your honor." Dkt. 9-13 at PageID #483. And third, the Harris County court did not issue a reasoned opinion but rather merely signed VIAAS's proposed order. *See* Dkt. 9 at 12.

**B.      VIAAS Has Come Forward with No Credible Evidence that the Asserted Patents Were Ever Transferred from Barracuda to VIAAS**

For the reasons laid out in Vivint's motion, even *if* the 2025 "nunc pro tunc assignment" *was* effective to retroactively transfer ownership rights in the '888 Patent from Third Iris Corp. to Barracuda Networks, there would *still* be an absence of: (1) an effective assignment of '069 Patent from Third Iris Corp. to Barracuda, and (2) an effective assignment of both asserted patents from Barracuda to VIAAS. *See* Dkt. 9 at 18. VIAAS attempts to overcome this hurdle by pointing to a 2017 "Bill of Sale and Assignment" that was recorded with the USPTO in 2017. Dkt. 11 at 10. But as the Western District of Texas court stated in its 2023 ruling, the relevant language in the 2017 Bill of Sale "bears a strong resemblance to the sort of contract language that the Federal Circuit has held to create only a promise to assign," and "[i]ndeed, [VIAAS] appears to concede that the 2017 Bill of Sale did not amount to an assignment." *Amazon.com*, 2023 U.S. Dist. LEXIS 72281, at *16-17. VIAAS attempts to relitigate the issue of whether the 2017 Bill of Sale was an assignment by referring to it as a "patent assignment recorded at the USPTO . . . listing Barracuda as ASSIGNOR and VIAAS as ASSIGNEE" of the asserted patents. Dkt. 11 at 1, 10. But the law

9

is clear that "recording of a document [with the USPTO] . . . is not a determination by the office of the validity of the document or the effect that document has on the title to . . . a patent." *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-cv-01511-WYD-BNB, 2015 U.S. Dist. LEXIS 6911, at *7 (D. Colo. Jan. 20, 2015) (quoting 37 C.F.R. § 3.54).

As expected, VIAAS also points to the purported "nunc pro tunc assignment" signed by Barracuda and VIAAS in 2023 that purports to retroactively transfer Barracuda's rights in the Asserted Patents to VIAAS effective June 12, 2017. Dkt. 11 at 10. However, as explained in Vivint's motion, that assignment is per se ineffective to transfer title in the patents from Barracuda to VIAAS because *Barracuda did not have any rights in 2017 or 2023 that could be transferred to VIAAS,* due to the lack of a valid assignment between Third Iris Corp. and Barracuda when the purported "nunc pro tunc" assignment was signed in 2023 (a fact VIAAS effectively admitted by concocting the sham 2025 "nunc pro tunc assignment" between Third Iris Corp. and Barracuda Networks). Per Federal Circuit case law, the 2025 "nunc pro tunc assignment" purportedly between Third Iris Corp. and Barracuda Networks could not retroactively convert the 2023 "nunc pro tunc assignment" into a valid assignment since it was a per se invalid assignment at the time it was signed in 2023. *See In re CTP Innovations, LLC*, 2016 U.S. Dist. LEXIS 165684 (Fed Cir. 2016).

**C.    VIAAS Does Not Hold any "Exclusionary Rights" in the Asserted Patents**

For all of the reasons laid out herein and in Vivint's motion, VIAAS lacks standing to assert the '888 and '069 Patents. In a last-ditch effort to save its case, VIAAS tries to argue that it nevertheless has standing because it "held an exclusionary right" in the patents when this suit was filed because "VIAAS alone paid maintenance fees, licensed the patents, and enforced them against alleged infringers." Dkt. 11 at 1, 14. But performing acts like paying maintenance fees and asserting patents cannot establish legal ownership, and VIAAS cites no case law for that.

10

Dated: January 20, 2026

Respectfully submitted,

*/s/ Gilbert A. Greene*
Gilbert A. Greene
State Bar No. 24045976
J. Bradford Thompson
State Bar No. 24046968
**DUANE MORRIS LLP**
Terrace 7
2801 Via Fortuna
Suite 200
Austin, TX 78746-7567
P: 512-277-2300
F. 512-597-0703
*BGreene@duanemorris.com*
*BThompson@duanemorris.com*

Ramsey Schultz
State Bar No. 24130391
**DUANE MORRIS LLP**
100 Crescent Court, Suite 1200
Dallas, TX 75201
P: 214-257-7259
F: 512-692-2559
*RSchultz@duanemorris.com*

**ATTORNEYS FOR
DEFENDANT VIVINT LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served

upon all counsel of record via ECF and electronic mail on this the 20th day of January, 2026.

*/s/ Gilbert A. Greene*
Gilbert A. Greene

11